

394-07/MEU/RLS
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
MERIDIAN BULK CARRIERS, LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MERIDIAN BULK CARRIERS, LTD.,

                        Plaintiff,

  - against –

ES CHARTERING LIMITED,

                       Defendant.
------------------------------------------------------------x

07-Civ-

**VERIFIED COMPLAINT**

Plaintiff, MERIDIAN BULK CARRIERS, LTD., (hereinafter "MERIDIAN") by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant ES CHARTERING LIMITED (hereinafter "ESC") alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

NYDOCS1/288371.1

2. At all times relevant hereto, MERIDIAN was and still is a foreign business entity duly organized and existing under the laws of the Marshall Islands with an address c/o Sono Shipping LLC at 919 Congress Avenue, Suite 620, Austin, Texas 78701.

3. At all times relevant hereto, ESC was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office and place of business at c/o Seaweb International Pte Ltd., 3 Shenton Way, 24-06 Shenton House, Singapore 068805.

4. On or about April 23, 2007, ESC, as disponent owner, and MERIDIAN, as charterer, entered into a maritime contract on an amended New York Produce Exchange time charter party form for the use and operation of the M/V SILVER YING ("the charter party"). The charter was for a period of a minimum of three (3) months and a maximum of five (5) months at a hire rate of $26,000 per day.

5. The vessel was delivered into MERIDIAN's service on April 23, 2007. Accordingly, the charter period will expire on September 23, 2007.

6. MERIDIAN has entered in to a sub-charter with Hanjin Shipping Company of South Korea to transport a cargo of bulk phosphate from Casablanca, Morocco to Yosu, South Korea aboard the SILVER YING at a daily hire rate of $33,000.

7. On or about August 2, 2007, MERIDIAN notified ESC that it intended to utilize the SILVER YING to transport the cargo under its contract with Hanjin.

8. In breach of the charter party ESC has refused to honor MERIDIAN's valid and proper order to have the vessel transport the cargo under its contract with Hanjin. In further breach of the charter ESC has improperly withdrawn the vessel prior to the period for which it had agreed the vessel would be at MERIDIAN's service and advised MERIDIAN that it considers the charter to have been terminated.

9. As a result of ESC's breach of the charter, MERIDIAN has been caused to arrange for a substitute vessel to transport the Hanjin cargo from Casablanca to Yosu. The hire rate for the substitute vessel is anticipated to be $42,000 per day, $16,000 more per day than the rate under the charter with ESC. Accordingly, by reason of ESC's breach MERIDIAN will incur damages in the sum of $688,000 representing the increased cost of the substitute vessel to transport the cargo under its sub-charter with Hanjin which is expected to take 43 days.

10. In addition to the increased cost of the substitute vessel to perform the carriage of the cargo under its sub-charter with Hanjin, as a result of ESC's breach MERIDIAN has lost the $301,000 profit it would have earned had the Hanjin cargo been transported by the SILVER YING (rate as fixed with Hanjin at $33,000 per day less rate as fix with ESC $26,000 equals $7,000 profit per day times 43 days).

11. Prior to ESC's invalid withdrawal of the vessel and cancellation of the charter, MERIDIAN made an advance payment of hire through August 21, 2007. Despite demand, and in further breach of the charter, ESC has failed and refused to refund the unearned hire which as best as can presently be estimated is in the sum of $94,000.

12. MERIDIAN also had supplied bunkers (fuel and lube oil) to the SILVER YING as required under the terms of the charter. In breach of the charter, ESC has failed and refused to pay to MERIDIAN the sum of $321,000 representing the value of the bunkers remaining on board the vessel at the time of the invalid withdrawal and cancellation of the charter and therefore ESC has been unjustly enriched in this sum.

13. MERIDIAN has fulfilled all obligations required of it under the charter party.

14. The charter party provides that all disputes arising thereunder are to be resolved in London arbitration with English law to apply. This action is brought to obtain security in favor of Plaintiff MERIDIAN in respect to its claim against Defendant ESC in aid of London arbitration proceedings, and, to the extent necessary, to compel Defendant ESC to arbitrate pursuant to the terms of the charter and if necessary to recognize and enforce the foreign arbitral award, when rendered, as a judgment of this Court.

15. This action is further brought to obtain security for any additional sums to cover Plaintiff MERIDIAN's anticipated costs in arbitration and interest, all of which are recoverable under English law and the rules of London Arbitration.

16. Upon information and belief, and after investigation, Defendant ESC cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "ASSETS"), including but not limited to "ASSETS" at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

17. As nearly as presently can be computed, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by MERIDIAN against ESC includes:

a. The differential in hire between the hire rate under the charter for the M/V SILVER YING and the hire rate for a replacement vessel in the sum of $688,000;

b. Lost profit on the sub-charter with Hanjin in the amount of $301,000;

c. Overpaid hire in the sum of $94,000;

d. The value of bunkers remaining on board the SILVER YING at the time of the unlawful cancellation of the charter in the amount of $321,000;

e. Interest of $241,009.00 on the above items, calculated at the rate of 8 % per annum, compounded quarterly, for two years, the estimated time it will take to obtain a final arbitration award and to enter same as a judgment, which interest is recoverable under applicable English law and arbitral rules; and

f. Estimated recoverable attorneys' fees, costs and the costs of the arbitration, which English solicitors estimate to be $250,000;

**For a total sought to be attached in the sum of $1,895,009.00.**

WHEREFORE, Plaintiff MERIDIAN BULK CARRIERS prays:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $1,404,000.00 plus interest, costs and attorneys fees;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$1,895,009.00**, be restrained and attached, including but

not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       August 15, 2007

>                               FREEHILL HOGAN & MAHAR, LLP
>                               Attorneys for Plaintiff
>                               MERIDIAN BULK CARRIERS, LTD.
>
>                         By: _____
>                               Michael E. Unger (MU 0045)
>                               Lawrence J. Kahn (LK 5215)
>                               80 Pine Street
>                               New York, NY 10005
>                               (212) 425-1900
>                               (212) 425-1901 fax

NYDOCS1/288371.1                                6

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
15th day of August, 2007

_____
Notary Public

JOAN SORRENTINO
Notary Public, State of New York
No. 01SO6067227
Qualified in New York County
Commission Expires December 3, 2009

NYDOCS1/288371.1                                7